Good morning. I may please support Mari Matsumoto for the petitioner Marvin Franco-Bardales. There are two main issues I'd like to address in argument here. First, that the board clearly erred in its violent or dangerous determination with respect to Mr. Franco-Bardales' criminal mistreatment offense under— May I ask you something which has been in the back of my mind as I was reading this case? Mr. Franco-Bardales' mother is an American citizen. That's correct. She petitioned for her son Franco to have his illegal alien entry status adjusted to that of a legal permanent resident in 2002. Correct? I don't have—let me look at the precise date of the petition. Yeah, I think to AR-160. My understanding was that it was before April 30, 2001, because he applied under the special adjustment provision. All right, so he applied in 2001, right? Or she applied for him. And the petition for adjustment of status was approved at that time, was it not? The underlying immigrant petition was approved, but then the adjustment of status application was before the immigration court. It's a two-step process. Yeah, but did he ever file the adjustment petition? Yes, the adjustment of status application was applied. When? To the immigration judge. But not between 2002 and the time he appeared before the immigration judge? He was waiting for the priority date to become current, Your Honor, in that category. And the priority date hadn't come up? The priority date, I believe, became current in 2000. I just wonder why wasn't this adjustment of status done way before the IJ hearing? But go ahead, you've explained it to me. Yes, I believe it was a lag in the priority date in that third preference category of adult children of U.S. citizens. Pardon me for interrupting you. Go back to your argument, please. I'd really like to focus on the first point, which is that the board's determination that Mr. Franco Bardal's criminal mistreatment offense under Oregon revised statutes 163.205 was a violent or dangerous determination was clearly an error. And in this case, the board adopted the immigration judge's reasoning, which is significant here because the immigration judge made that determination prior to hearing any testimony. And this is in the record at page 172. When the petitioner came in with his counsel to court, this is at his merits hearing prior to hearing his testimony, prior to hearing his wife's testimony, which was later deemed credible. And credible testimony is deemed true pursuant to this court's case law. The judge said, I find that you are going to be held to this higher standard, that you have been convicted of a violent or dangerous offense. So that determination prior to consideration of testimony was contrary to the regulation in effect at the time of the hearing. And that's 8 CFR 1212.7D, which clearly states that that's to be a discretionary determination. And the board's jurisprudence in matter of John, where in that case, involving a different type of waiver of inadmissibility, the attorney general stated that- Pardon me, didn't he plead guilty in a mistreatment offense to failing to take the scalded child to the hospital? That's correct. He testified- Why is it necessary to have testimony to determine that failing to take a scalded child to the hospital is a dangerous offense? Because, Your Honor, he testified again and again throughout the record at pages 135, 192, 219, 220, that the reason why he delayed the medical care here was because he reasonably believed that the mother of the victim needed to be present for the child to be treated. So rather than calling 911, he called the victim's mother and the victim's mother told him, I need to be there, pick me up. And he picked the victim's mother up and then drove the child to the hospital. But that is evidence which was not presented to the trial court because he pleaded guilty to the offense. But in this determination, a violent or dangerous determination, it's a discretionary determination. And can't this discretion be exercised on the face of the plea? Or is there some requirement that facts, evidence should be taken? There absolutely is a requirement. Under this court's case law in Via Anguiano v. Holder, which was cited in the petitioner's 28-J letter, there this court has held that when the board fails or disregards probative evidence, that should be taken into consideration in an exercise of discretion. The agency has, in fact, not exercised discretion but failed to exercise discretion. And that is a legal error. So in this case where the immigration judge prejudged the issue before Mr. Franco Bardella's had an opportunity to explain the underlying circumstances of the crime, which was corroborated by other witnesses, that was a failure to exercise discretion in this case rather than a proper exercise of discretion. But help me understand, because it seems like whether a crime is violent or dangerous, it's left to the discretion of the attorney general. Is that correct? Yes. Okay. And so the INA does not really define violent or dangerous crime in the 212H waiver context. But it does say that the agency may consider all probative evidence outside the record when making the factual determination. Is that correct? That's correct. All right. So the IJ can consider all of the circumstances of the crime when determining whether a crime is violent or dangerous. It seems like here that the IJ applied the controlling authority, and I think it was a matter of gene, and appropriately, based on a matter of gene, and appropriately considered all the relevant evidence surrounding Franco's mistreatment conviction. I guess I want to understand your argument, because you're saying, despite what the IJ may or may not have done in looking at all the other evidence, it needed to have considered, in addition to all of that, the explanation of the petitioner. Is that what you're arguing? That's correct. Tell me the authority for that. Sure. In matter of genre, the Attorney General contemplated that the confession of the applicant for the waiver of inadmissibility in that context should be considered. That was a confession. Was there not a confession in that one? Did he confess in this one? No, there is no confession, but the applicant's own statements, sworn statements, should be considered pursuant to matter of genre, and they weren't considered here. The immigration judge prejudged the matter. Did he not listen? Are you saying he didn't listen at all to any evidence regarding the petitioner? I'm saying that whatever post hoc rationalizations the immigration judge may have included in her decision at the close of testimony, it's simply contradicted by the record, because she actually had made the decision before hearing any of the evidence. And at page 172 in the record, once again, she doesn't cite what factors she considered in making that discretionary determination. She doesn't state there whether she considered the conduct to which he pledged. She doesn't state any reasons. In fact, she doesn't even identify which offense it was that was violent or dangerous. She simply says, I find that he has been convicted of a violent or dangerous, the offense, he has committed an offense which is either dangerous or violent, and the court does require a higher standard as defined under the regulations of matter of genre. But I guess I'm trying, in these circumstances, because he was charged with assault and also the mistreatment, and the facts underlying both of those convictions, there were core facts underlying both of those convictions, correct? That's correct. And so I just, I'm trying to figure out, was there some authority that says that the IJ can't do that in making this determination of whether it's a violent or dangerous offense? Well, because the only thing that the judge had at that point was the conduct to which he pled, the immigration judge did not have any of the additional facts regarding the circumstances of the commission of the crime. At the time that he made the, he or she, the IJ made this determination, the facts that he or she had in front of it included the assault and the mistreatment, correct? She knew that he had been convicted under both of those circumstances. So what are you submitting are the facts that the IJ had in front of it? So the immigration judge had documentary submissions from both of the parties, and those submissions included the record of conviction, and that included the indictment, the plea agreement, included the judgment and sentence, and the department had submitted a police report as well that included unsubstantiated hearsay statements that were never evaluated in the trial court. The immigration judge made her decision on the basis of those documents without hearing from Mr. Franco Bardales, another witness present there, his wife, and without making reference to his own expert forensic medical evaluation that had been submitted in his own submission to the court. And I would just like to point out that even when making a discretionary determination, this court has held that where an immigration judge prejudges the issue, that that's a violative of due process as well, and that was in Coleman RV INS where the application also discretionary was asylum, and the immigration judge had already determined that the person was not deserving of asylum at the outset of the hearing prior to hearing testimony. This is a similar circumstance here. He applied for a discretionary waiver. The violent or dangerous determination should consider all relevant probative evidence, including credible testimony. And why do you say that the immigration judge made up his or her mind before hearing the evidence that Franco Bardales wanted to give? Because in the record at page 172, before any testimony was taken, she said, now his counsel came in and said, not being from this jurisdiction, Your Honor, I'm not sure whether you're going to rule ahead of time on what standard we're going to be using for extreme hardship or exceptional unusual. And the judge said, all right, thank you, that's a fair question. I do find after a review of the section of law in question, in this case, I find that the higher standard is applicable, that he has committed an offense which is either dangerous or violent, and in particular noting the victim as well, that the court does require the higher standard as defined under the regulations in matter of John. That was before any testimony had been presented by the petitioner or his witnesses. And we review the BIA decision, not the IJ's decision. And the BIA accepted that as the basis of the decision? That's right. The Board of Immigration Appeals in the record at page 61 said, we agree with the immigration judge that the respondent's criminal mistreatment offense was a violent and dangerous crime. That's in page 61. So you're saying that decision was made by the immigration judge based on what was submitted with regard to the indictment, the plea agreement, et cetera? Yes. I mean, she later expressly said in her decision that she limited her consideration to the modified categorical approach. But isn't there case law to say in the Ninth Circuit that where a protected class of victim is involved, which would include minor children, which is clearly the case with Mr. Franco-Bogdalas, this is a minor child who was in his care who was scalded, all that information is provided to the immigration judge in the indictment of the plea agreement? That's correct. But I believe that what Your Honor is referring to is actually the crime involving moral turpitude analysis, which is restricted to a categorical analysis or a modified categorical approach. And that's if a statute is divisible and the modified categorical approach is used, that's where you look to see whether there is a special relationship to the victim, whether there's a reprehensible act, whether there's a requisite mens rea involved. But for the discretionary determination of whether an offense is violent or dangerous, in Torres Valdivia, as this Court made perfectly clear, that that's a determination that should include all relevant probative evidence, including testimony about the circumstances of the crime. And I see that my time is up. I'd like to reserve one minute. And the remedy you seek is a remand for the IJ to consider this evidence and reconsider the finding of violent or dangerous? Yes, Your Honor. Because that undermined the fairness of the entire proceedings, and the immigration judge, in using the correct legal framework, ought to have listened to the full testimony before rendering a decision and explained her reasons on the record. Thank you. Good morning, Your Honor's counsel. My name is Margaret Cuney Taylor. I represent the Department of Justice in this matter. It seems that you are focusing on the violent or dangerous dimension of this case, and so that's where I'm going to direct my comments first. We need to look again at the juncture at which the immigration judge said that she would be looking at the exceptional and extremely unusual hardship standard. Because at that point, the immigration judge had already received briefs from both parties addressing the question of violent or dangerous. These briefs are found in the record at pages 466 for the DHS brief and 477 for Mr. Franco Bardalis' brief. But the briefs don't contain any evidence? They don't contain evidence. But if we are going to say that the immigration judge was making this determination prematurely, we also have to look and see what the immigration judge had already been presented regarding the standard. What evidence had he been presented at the time that he made the decision? Not briefs, but what evidence? Well, the evidence that Your Honors and my esteemed counsel have gone over, the indictment, the conviction. The documents of conviction. Exactly. So the documents of conviction for purposes of a categorical analysis were in the record by the time the IJ made the determination. Well, not exactly, because there were also documents beyond what would be considered for a categorical analysis. For example, police reports. So at least the documents for categorical analysis, documents of conviction, were there. Then there were some other documents which had some evidence before the IJ. Correct. Right. But what the IJ didn't do before arriving at the determination to apply the higher standard was to listen to what Mr. Franco Bardalis had to say as to the circumstances which surrounded his guilty plea for mistreatment of the child. Well, I don't completely agree with this statement, Your Honor, because even though the immigration judge at that point in time at counsel's request said, look, I'm going to be looking at the exceptional and extremely unusual hardship standard, she did end up taking in a lot of evidence and considering that evidence regarding whether the crime was violent or dangerous. After he said he was going to use this standard? She said she was going to be looking at this standard, yes. And not only that, but in the immigration judge's decision, she said you haven't met, Mr. Franco Bardalis, the exceptional and extremely unusual hardship standard, but you haven't met the extreme hardship standard either. So this demonstrates that the immigration judge was actually considering both standards throughout, made a finding as to both standards, and it also demonstrates that there is no point in sending the case back, because the only thing that Mr. Franco Bardalis could possibly benefit is to get consideration under the extreme hardship standard, which he already got. Let me ask you. So you don't dispute that the IJ was required to listen to Mr. Franco Bardalis before making a determination, a final determination? I don't think the immigration judge did that. That's not my question. I'm going to get to there. But right now, you don't dispute that the IJ was required to do that? I think that this is a completely discretionary decision, and I don't think that. I know it's a discretionary decision. Or let me ask you, was the IJ required to listen to Mr. Franco Bardalis before making or prejudging any kind of standard decision? I don't know what the authority would be that would say that the immigration judge had to make this determination. Do you have any authority counter to that? Well, the authority that this is governed by is 8 CFR 1212.7D, and nothing in there says that this decision has to be made at a certain juncture. And the Ninth Circuit, I'm sorry, Judge? I'm trying to just sort out here because it does look like defense counsel, the immigration judge's petitioner's counsel asked what standard at the outset. The judge gave a response. Right. And then it appears, you know, the petitioner presented evidence. The immigration judge didn't change its standard after listening to that. Is that sufficient for our purposes of review? And if so, why and what authority? It is sufficient. There is very little authority on this reg. Is there any? But there is a case, I think, that your opposing counsel, Ms. Matsumoto, said that judges aren't supposed to prejudge. So did the immigration judge prejudge this? No. Why not? The immigration judge didn't prejudge because at the end, well, let's work backwards from the immigration judge's decision. The immigration judge considered both standards, the extreme hardship and the exceptional and extremely unusual hardship. If she had been prejudging, she would have never reached the extreme hardship finding. I'm sorry. Explain that. Why did you think she looked at both standards? The immigration judge, let's see if I can. Direct you to the page. The immigration judge at page 24. Page 24 of. Oh, I'm sorry. Not the. I'm sorry. Not the. That's 24 of the immigration judge's decision. It's AR. I don't want to use up my time doing this. It's on page AR149. The second to last paragraph, the immigration judge said, the court cannot conclude that the respondent's removal would result in extreme hardship, let alone the higher standard required in this matter to himself, his parents, or his child. In other words, the immigration judge said, I'm not just looking at the heightened standard in 1212.7D. I'm also looking at the statutory standard in INA24I, which is really the only thing that petitioner could benefit if he wins this extreme hardship. And was that after Mr. Franco Bardalis had testified? It was. Okay, but I think what you're. That's attacked as a post hoc rationalization because she's already, or the IIJ had already made up her mind. I don't think so because if the IIJ had already made up her mind, why would she have even gone here? Okay, so two questions. One is that what your opposing counsel is arguing is that, I think the record's clear, is that because there was a clarification asked, the IJ said, yes, I've made a determination. This is violent and dangerous. And what she's arguing and what appears to be borne out by the record is that the record of conviction, the indictment and so forth, doesn't really contain all of the information that we're talking about now, the scalding and so forth, showing an intentional harm to a minor protected class, right? Well. In terms of the mistreatment, taking it apart from the assault. So she's saying she prejudged it, there wasn't any testimony. And you would agree with that. At that point, there wasn't any testimony by Mr. Franco Bardalis about the mitigating factors that she raised. I agree with some of what you've said, but not everything. Okay. But then we're left with the fact that then a trial and evidence is taken in, including Mr. Franco Bardalis' testimony with regard to the mitigating factors surrounding the mistreatment charge. So you're saying that at, I guess, page 24 in the record, AR149, where she alludes to the fact that she's looking under both of these standards, indicates that she's taken into account Mr. Franco Bardalis' testimony about the mitigating factors, and she's evaluated under both standards. Yes. That shows that she has considered both standards. Now, one of the things that Your Honor said that I don't completely agree with is there's no violent or dangerous is completely discretionary. So this idea that intent needed to come into the calculation. Right. An intentional crime would be violent and dangerous, but a violent and dangerous crime doesn't necessarily have to be intentional. Exactly. Okay. By totally discretionary, do you mean that the immigration judge doesn't have to consider any testimony? She doesn't take a look at the plea and say, that's good enough for me? Well, I think that is what Judge Murguia was getting at, if I understood correctly. I don't know that – I don't see anything in the law that demands that the immigration judge make this determination at a particular point in time. But it doesn't matter, because in this case – What about the cases that are cited by Ms. Matsumoto from the Ninth Circuit saying that it's an abuse of discretion for an immigration judge to exercise his discretion without any consideration of the evidence presented? But that's not what happened here. Well, that's what – if the immigration judge at the beginning of the hearing, before there's any evidence, says, I'm applying the violent or dangerous standard, that means that the immigration judge has already decided this crime is violent and dangerous without hearing any explanations or any mitigation. Well, but that's not all that was before the immigration judge at the time that she made that call, because she had all the documents that were created along with the state court. So you say that the immigration judge can make up her mind on a partial record as far as exercising discretion? The court doesn't have to reach that, because that's not what happened here. Well, you go back and forward now. What happened is that you say that AR 149, when she determines after the testimony regarding mitigation that Franco Bardellas hasn't met either standard, unlike Ms. Matsumoto who says that's post hoc rationalization, you say that is a valid finding and exercise of discretion? I'm saying that if that had happened, it might be, but it didn't happen that way. What had happened? If what Your Honor just said about – Post hoc rationalization. Exactly. But that is not what happened here. How do we know that? Because at the end of the hearing, the immigration judge said she's considered both standards and Franco Bardellas didn't meet either one. Which, of course, also means that at the end of the day, since both standards have been considered, there's no point in going back because everything that could happen in terms of what can be decided hardship-wise has already happened. All right. I have just a few seconds left, and I'd just like to briefly touch one more point that was brought up in the petitioner's latest 28J. It's important to note that, A, this divisibility modified – oh, you know what? I'm going to address something else. Sorry to wander. There are several junctures in the briefs, the petitioner's briefs, where they say that it's necessary to show that – and I think maybe Your Honor addressed that – that a violent or dangerous crime is a CIMT. Those are two separate analyses. Crimes such – you know, burning a 2-year-old and then delaying medical treatment, whether it's a CIMT or not, the immigration judge could reach the determination that it was a violent or dangerous crime. And if the court – the court really doesn't have jurisdiction to look at the weighing of the equities and the crimes because it's a discretionary determination. So the government, in conclusion, asks that the court dismiss for lack of jurisdiction or, in the alternative, dismiss for lack of jurisdiction and deny petitioner's petition. Thank you. Thank you. Ms. Matsumoto, what's wrong with the argument that maybe the IJ stated at the beginning before hearing the testimony that this violent or dangerous standard applied but then heard the testimony and then came back to the same conclusion at the end of the testimony? So, therefore, the judge did consider the mitigation testimony and it didn't change her mind? I think there's a couple of different answers to that question. One is that even if the judge, after the fact, said, I've considered this factor, this factor, this factor, I've considered all of this record evidence, the record contradicts that finding. The fact that she made that announcement at the beginning of the hearing shows that she really had made up her mind at the beginning. The second issue with respect to that is, as counsel for the government stated, the immigration judge found or stated in her decision that the lower hardship standard had not been met either after hearing the testimony. That determination was not expressly adopted by the board and the only thing on review here is the board's decision and the rationale in the board's decision. And the board found that the only issue it was reviewing is whether or not the criminal mistreatment offense was a crime involving moral turpitude and a violent or dangerous offense. And the underlying conduct for the criminal mistreatment offense, as stated in the plea and corroborated by the petitioner's testimony, was a delay of medical care. Not the underlying scalding, not a combination of the two offenses. So the criminal mistreatment offense involved a delay of medical care. He credibly testified to the circumstances, which were extremely sympathetic with regard to that offense. And the board nonetheless found that that was violent or dangerous, adopting the immigration judge's rationale and the immigration judge's rationale is nowhere present at the point where she made the decision prior to hearing testimony. What about at page 21 of her decision, the immigration judge in the record at 146, where she goes through the fact that she takes into account his testimony with regard to the mistreatment? It's basically a paragraph. She says, in this case, respondent has two convictions, third degree assault and criminal mistreatment for crimes involving moral turpitude. Both convictions arose from the same incident. He was convicted and so forth. And then she states about the John case. Nevertheless, the court finds that the respondent's case is sufficiently comparable to John. The respondent knowingly caused physical injury to a child and delayed subsequent medical treatment. Then she refers to the respondent's testimony, but she says, I can't go behind the judicial record to determine guilt or innocence. So doesn't that show that she considered the testimony and factored that in in terms of her determination about violent and dangerous crime? She makes the finding. She finds that the respondent committed a violent and dangerous crime is required to demonstrate the higher standard. No, for, again, two reasons. She made a couple of different errors even in that part of her decision after hearing the testimony. One in holding that she couldn't go behind the record to look at the underlying circumstances of the crime to determine his guilt or innocence is actually contrary to matter of John, where, in fact, in matter of John, the opposite situation was at play. The applicant for admission there had pled to kind of minimally culpable conduct, but the underlying circumstances were actually pretty grave and base and vile and depraved and violent, quite frankly. So there the attorney general said it's entirely appropriate to look at the underlying circumstances, not just the record of conviction. And here Petitioner is entitled to the same discretionary analysis. Here, although he pled to conduct that perhaps on its face looks pretty serious, the delay of medical care, in fact, when you look at the underlying circumstances surrounding the commission of the crime, the circumstances are quite sympathetic, and those should have been weighed by the immigration judge, and she expressly stated in her decision that she did not. And then the other thing that the immigration judge does in that paragraph that Judge Kobayashi, you cited, was that she states that both convictions arose from the same incident, when in fact they were two separate incidents. And the indictment makes that clear, that the assault offense related to the bathwater incident. The criminal mistreatment offense, which is the only offense considered by the board in its decision and the only issue on appeal, was the delay of medical care. So caused by driving the child to the hospital rather than calling 911. I think you've run out of time. Thank you very much. Yes, thank you. Court thanks counsel. And the case of Franco Bardales v. Holder will be marked submitted.
judges: Kobayashi, Bea, Murguia